[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 27.]

THE STATE EX REL. SCHULTZ, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Schultz v. Indus. Comm*., 2002-Ohio-3316.]

*Workers' compensation—Ability to do any work warrants a denial of permanent*
*total disability compensation benefits—Claimant who performs sustained*
*remunerable activity without pay demonstrates that he or she is capable*
*of doing the same work for remuneration.*

(No. 2001-0001—Submitted April 9, 2002—Decided July 10, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-166.

_____

PER CURIAM.

{¶1} Appellant-claimant, Elizabeth B. Schultz, was injured in 1978 while working for Southern Ohio Medical Center. In 1986, she was awarded permanent total disability compensation ("PTD") for those injuries. At issue is claimant's subsequent involvement with the S.S. Swim Shop and whether that involvement warranted termination of PTD.

{¶2} In the mid 1980s, claimant's daughter, Susan Hunter, owned a shop selling swimwear and aquatic equipment in Portsmouth, Ohio. In a 1999 report, an investigator for the Bureau of Workers' Compensation ("BWC") described claimant's involvement in the business:

{¶3} "[W]hen the business was first opened, Schultz [claimant] mostly watched the children of Hunter. Hunter stated that Schultz was on the business account, paid bills, filled in on the schedule when Hunter could not work, and consulted with merchants. Presently, Schultz waits on customers, pays bills, signs payroll, does the scheduling, and places orders."

{¶4} Claimant made a similar statement to bureau investigators:

{¶5} "When the store was opened, I paid the business bills, did payroll, consulted with merchants on swimwear, placed orders, and filled in on the schedule when others weren't available. The business checking account was set-up with my name on it.

{¶6} "Presently, I still do the same duties with the swim shop. I usually go into the swim shop three days per week, usually from 10:00 a.m. to 5:00 p.m. While up at the store, I wait on customers, keep the displays stocked, and continue with all of my previous duties of paying bills, consulting, payroll, ordering, and complete the scheduling.

{¶7} "* * *

{¶8} "I sometimes go to swimmeets [sic] and set up stands/displays and sell the swim gear. We set up at local swimmeets and sometimes go to Dayton and Columbus, Ohio for meets. Over the past several years, I would help the expansion of the business by making telephone calls to solicate [sic] business."

{¶9} Claimant made the following comments in a recorded conversation with an insurance adjuster after she filed an insurance claim for a 1998 fall while selling equipment at a YMCA swim meet:

{¶10} "Q.. [Adjuster] [D]o you work outside the home?

{¶11} "A. [Claimant] No. All I do is I manage, uh, a swim shop for my daughter.

{¶12} "* * *

{¶13} "Q. Okay. Uhm, how many hours a week do you normally work?

{¶14} "A. Uh, usually, oh, sometimes, uh, 18-20 hours.

{¶15} "* * *

{¶16} "Q. Okay. Are you a member of the 'Y'?

{¶17} "A. No. No. I was in there, uh, doing a swim meet. Uh, we come in and, uh, service their swim meets. We bring our suits in, anything pertaining to swimming we bring.

{¶18} "Q.  Okay.

{¶19} "A.  And we sell.

{¶20} "Q.  How often do you frequent the 'Y?'

{¶21} "A.  Well, usually twice a year.  I usually come in and suit up their team and then I usually do their meet for them.

{¶22} "* * *

{¶23} "Q.  Okay.  Do you recall, did you know any of them [the witnesses to her 1998 fall]?

{¶24} "A.  Well, no.  But I, the girl that was with me, Joanne Phillips, that, you know, had come with me —

{¶25} "Q.  Uh, huh.

{¶26} "A.—to help me was there.

{¶27} "Q.  [I]s Joanne a friend of yours?

{¶28} "A.  Yes.  Uh, huh.  She works for me part time.

{¶29} "* * *

{¶30} "Q.  Okay.  [D]o you have any physical handicaps at all?

{¶31} "A.  No.

{¶32} "* * *

{¶33} "Q.  Okay.  Did you walk with a cane, uh, prior to this past injury [at the YMCA]?

{¶34} "A.  No.  No.

{¶35} "* * *

{¶36} "Q.  Okay.  Is there anything else that you can think of that you'd like to mention about this claim that we haven't already discussed?

{¶37} "A.  No.  It just, it cost me quite a bit.  [I]t cost me my business cause I had to pay somebody to come in and work for me.

{¶38} "* * *

{¶39} "Q. Uh, huh. And how many hours do you pay someone to work for you?

{¶40} "A. Well, I had, well, I was off, you know, we were paying out like, you know, 30 and 40 hours * * * a week.

{¶41} "* * *

{¶42} "Q. Okay. And you still had the other employee in addition to hiring someone else to work?

{¶43} "A. No. I have three girls that filled in for me that, you know, were able to, uh, you know, take care of the business while I was laid up.

{¶44} "Q. Okay.

{¶45} "A. Which I hadn't planned on believe me.

{¶46} "* * *

{¶47} "Q. Okay. So then after you were injured you had three people working?

{¶48} "A. Yes. Uh, huh.

{¶49} "Q. So actually you'd only hired one other person to —

{¶50} "A. That's right.

{¶51} "Q. — to work while you were off?

{¶52} "A. To help. Yeah."

{¶53} Other evidence obtained by the bureau included (1) a business card for S.S. Swim Shop, with claimant's name listed first, (2) surveillance videos of claimant behind the counter at S.S. Swim Shop, (3) a statement from a BWC investigator that he entered the store and purchased an item from claimant, who was the only person there, and (4) a business transaction journal from TYR Sport, Inc. that established claimant as a contact person for S.S. Swim Shop.

{¶54} On October 5, 1999, the Bureau of Workers' Compensation moved appellee, Industrial Commission of Ohio, to terminate PTD and declare an overpayment. In a meticulous five-page order, a staff hearing officer ("SHO")

4

granted the bureau's motion. Citing *State ex rel. Smothers v. Mihm* (1994), 69 Ohio St.3d 566, 634 N.E.2d 1017, the SHO stated that PTD could be terminated if claimant is (1) engaged in sustained remunerative employment or (2) engaged in activities that, even if unpaid, were inconsistent with PTD receipt. Lacking evidence of claimant's receipt of wages for her services, the SHO relied on the second criterion.

{¶55} Citing much of the evidence quoted above, the SHO rejected claimant's assertion that her involvement with S.S. Swim Shop was minimal and that she only worked as an occasional "favor" to her daughter. The SHO wrote:

{¶56} "The SHO further finds an ongoing pattern of assistance to be work. The SHO finds that the claimant was involved in the latter."

{¶57} And:

{¶58} "[T]he SHO finds that the claimant was engaged in activity which is/was inconsistent with the receipt of [PTD]. While the claimant may have performed some favors for her daughter, the claimant's pattern of work since 1984 is of such duration and degree that she was an ongoing, active participant in the running of the swimp [sic] shop. The claimant was working."

{¶59} Reconsideration was denied.

{¶60} Having lost her bid for a writ of mandamus in the Court of Appeals for Franklin County, claimant now appeals to this court as of right.

{¶61} Permanent total disability is the inability to do *any* sustained remunerative work. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 509 N.E.2d 946. Therefore, an *ability* to do *any* work warrants the denial of PTD. Consequently, a claimant who performs sustained remunerable activity without pay demonstrates that he or she is capable of doing that same work for remuneration.

{¶62} That is the case here. There is no evidence that claimant was paid for her efforts. The commission instead focused on claimant's activities without pay

and concluded that claimant was capable of doing those same duties for pay, i.e., that she was capable of performing sustained remunerative employment.

{¶63} Completing its analysis, the commission found, in effect, that claimant's activities were sustained, not sporadic, in nature. It rejected the notion that claimant's involvement was limited to 'intermittent favors,' finding instead that claimant engaged in a "an ongoing pattern of assistance" — in other words, sustained activity.

{¶64} Claimant proposes that PTD can never be terminated absent medical evidence of an ability to work. That is untrue. Medical evidence that supported the original award of PTD may be impeached by evidence other than medical evidence. It can be impeached by subsequent evidence that claimant is actively doing work. As the magistrate observed in the court of appeals, "When there is evidence that claimant is actually engaged in certain physical activities, it is not necessary to have an expert opinion that the claimant is capable of performing those activities."

{¶65} In conclusion, the commission has "some evidence" to support a finding that claimant is medically capable of sustained activity for which she could be remunerated. Therefore, it did not abuse its discretion in terminating PTD and declaring an overpayment for periods in which compensation and inconsistent activity overlapped.

{¶66} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

Angela D. Marinakis, for appellant.

Betty D. Montgomery, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee.

January Term, 2002

---