THE STATE EX REL. ACKERMAN, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Ackerman v. Indus. Comm.*,
99 Ohio St.3d 26, 2003-Ohio-2448.]

(No. 2002–0355—Submitted April 15, 2003—Decided May 16, 2003.)

**Per Curiam.**

{¶ 1}  At issue is the determination of .appellee, Industrial Commission of Ohio, that appellant-claimant, Delbert H. Ackerman, engaged in—or was capable of engaging in—sustained remunerative employment while receiving permanent total disability compensation ("PTD").  Because the performance of—or ability to perform—sustained remunerative employment bars PTD, that finding triggered compensation termination and declarations of both overpayment and fraud.  See *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576.

{¶ 2}  There are two strikingly different portraits of claimant contained in the record.  There is no question that claimant received massive injuries in a 1969 auto accident that occurred in the course of and arising from his employment.  Nor is there any question that claimant received considerable income in the years that followed due to his involvement in various business enterprises and investments.  The character and extent of claimant's involvement are less clear.

{¶ 3}  The record, for example, contains three newspaper articles about claimant published in local Florida newspapers, two in 1975,[1] and 1987 respectively.  One 1975 article is entitled "A Dynamo:  Del Ackerman Causes Sparks to Fly."  It reads in part:

---

1.  Both articles refer to claimant's upcoming 13th surgery as being six years after his accident.  For this reason, a 1975 date has been ascribed to these undated articles.

{¶ 4}  "It is difficult—maybe impossible—to capture some personalities on paper.

{¶ 5}  "There is the indefinable word 'charisma,' much used and abused the last few years.  * * *

{¶ 6}  "Simply put, charisma means 'I don't know what you've got—but you've got it.'

{¶ 7}  "That's the way it is with Del Ackerman.  When he talks, sparks fly. He sets off little vibrations.

{¶ 8}  "* * *

{¶ 9}  "* * * Maybe it is because he would rather do business with the Florida Cracker than the blueblood.  Maybe it is because he is a natural born huckster and promoter.

{¶ 10}  "Delbert H. Ackerman owns Del's Markets.  * * *

{¶ 11}  "He also has full or part ownership of several other businesses but he prefers to remain in the background in those.

{¶ 12}  "And he has plans for expansion of his convenience store chain, and diversification into other merchandising fields."

{¶ 13}  A second 1975 article stated:

{¶ 14}  "The Ackermans moved to Naples in August, 1972 and now operate Del's 6–12 Grocery stores on Airport Road, Kelly Road and the Isles of Capri Road.

{¶ 15}  "Del's injuries have not prevented him from building up a business that has often required him to work up to 18 hours a day, seven days a week.

{¶ 16}  " 'I figure I'm lucky that I can still walk around' he said.  'If you want to get anything done you have to keep at it.' "

{¶ 17}  Finally, there was a 1987 article entitled "Del Ackerman on duty 24 hours a day."  After describing his accident, the article states:

{¶ 18}  "Today, Del Ackerman, entrepreneur, showman, local personality, moves from one business venture to another with a briskness in his walk that makes a mockery of the doctors' statements that he would never get out of the wheelchair.  * * *

{¶ 19}  "* * * [C]learly some of the lingering pain is still there.  It is now controlled, if not completely beaten, by Del's own strenuous fitness program which has helped to strengthen his body sufficiently to fight what he has come to accept as mere discomfort 'which isn't going to get in the way of me enjoying life.' "

{¶ 20}   Claimant, in his own words, was "not going to stay home and feel sorry for myself." This was a sharp contrast to the claimant's words in his 1992 PTD application, where he wrote:

{¶ 21}   "This injury ruined my life. I was always the 'Number One' worker but because of this injury I was ruined for life."

{¶ 22}   And:

{¶ 23}   "I do no meal preparation, no home repairs, no laundry. I just stay around the house. * * * I only watch television. I used to be very active, but after the injury, I can do nothing."

{¶ 24}   The above clippings all precede his allegation of PTD—a point claimant understandably stresses. Claimant, however, provides no evidence that his medical conditions deteriorated so significantly in five years that the "24–hour man" of 1987 could claim in 1992 that he had been "ruined for life" and was incapable of anything other than watching TV. It is within this context that the facts unfold below.

{¶ 25}   Claimant's 1992 PTD application was granted in 1994, and compensation was awarded retroactively to March 15, 1991. In 1999, his response to an annual Bureau of Workers' Compensation inquiry indicated that he had done some work during the previous year. This admission triggered a bureau investigation that revealed much more extensive business activity involving at least five identifiable enterprises. Relevant information for each is set forth individually.

*Grocery/Convenience Stores*

{¶ 26}   These enterprises have been variously referred to as "Del's 6–12 Grocery," "Del's Markets," and "Del's 24 Hour Store." Evidence suggests the existence of, at one time, at least three stores, and clearly confirms two. The bulk of the evidence, however, relates to a store on Thomasson Drive. A 1992 credit application listed the store as a proprietorship and claimant as its president.

{¶ 27}   Claimant's answers to interrogatories that had been prepared for a 1993 motor vehicle accident insurance claim indicated that claimant was "[s]elf-employed from 1987 to 1995, as owner of grocery store located at 2802 Thomasson Drive, Naples, Florida 34112; Rate of pay is $52,000 per year. No employment after 1995."

{¶ 28}   In response to another interrogatory as to whether claimant had "lost income, benefits, or earning capacity" as the result of his 1993 accident, he wrote:

{¶ 29}   "Yes; shortly after the accident, I lost approximately one month's work for doctors visits, therapy and surgery. I have lost work time over the past

four years every now and then because of flare-ups. Altogether, I have lost about $10,000 income, calculated at a salary of $4,000–$5,000 per month."

## Del's Wholesale

{¶ 30}   The character of the enterprise referred to as "Del's Wholesale" is somewhat unclear.   The bureau's investigative report seems to consider it a business separate from the grocery stores, but a state of Florida document gives it the same address as the Thomasson Drive store.

{¶ 31}   An April 4, 1994 liquor license permit for Del's Wholesale indicated that claimant's license had been transferred to his wife, Nancy.

## Del–Jak Corporation

{¶ 32}   The only information contained in the record about this enterprise is that the claimant was a silent partner in this enterprise that was doing business as USA Cab Company.

## Enterprise Rent–a–Car

{¶ 33}   This is the work to which claimant admitted in his 1999 bureau contact letter.   Claimant was hired on August 8, 1997, as a courtesy driver and apparently worked intermittently through the following March.   Relevant evidence included (1) claimant's assertion that he was capable of full-time work and would work overtime, (2) claimant's written statement that he was willing to do "whatever it takes to get the job done and what ever hours it takes to cover," and (3) claimant's termination form indicating that he was quitting due to "illness/injury."

## Naples Daily News

{¶ 34}   Claimant's involvement with a newspaper delivery route began sometime in 1997.   While wife Nancy was named as an independent contractor with the newspaper and received checks in her name, four employees of the Naples Daily News told investigators that it was claimant who did all the work, loading his vehicle with the papers and distributing them along his designated route. These bundles of papers weighed between approximately 20 and 25 pounds. Nancy's involvement was limited to selling subscriptions.   When asked why his wife was receiving the paychecks when he was doing all the work, claimant stated that his accountant had told them to do it that way.   In 2000, the Naples Daily News paid Nancy $35,000 for the paper route and $38,728 for the subscription sales.

{¶ 35}   Based on its investigation, the bureau moved to terminate PTD and to declare an overpayment.   The commission granted the motion, making four relevant findings based on the evidence cited above.   It (1) declared overpaid

PTD received by claimant from March 15, 1991, through April 4, 1994, based on claimant's grocery store ownership; (2) declared overpaid PTD from April 7, 1997, through November 2, 2000, based on claimant's activities with Enterprise Rent–a–Car and the Naples Daily News, (3) terminated further PTD effective November 2, 2000; and (4) found that claimant had committed fraud in collecting these payments.

{¶ 36} Claimant challenged these findings in mandamus in the Court of Appeals for Franklin County. With the exception of changing the date when overpayment began on the second period from April 7 to August 7, 1997, the court of appeals upheld the commission's order in its entirety. Claimant now appeals to this court as of right.

{¶ 37} Claimant does not seriously challenge the termination of compensation subsequent to November 2, 2000, nor does he vigorously deny that he engaged in activities inconsistent with the receipt of PTD from August 7, 1997, to November 2, 2000. Claimant instead concentrates on the first period of overpayment and the declaration of fraud. For the reasons that follow, we affirm the judgment of the court of appeals in all respects.

*March 15, 1991, through April 4, 1994*

{¶ 38} Claimant contends that in declaring this period overpaid, the commission (1) equated business ownership with sustained remunerative employment and (2) relied on newspaper articles that predate PTD.

{¶ 39} Claimant validly asserts that the mere fact of business ownership, without more, should not defeat eligibility for compensation. See *State ex rel. Ford Motor Co. v. Indus. Comm.* 98 Ohio St.3d 20, 2002-Ohio-7038, 780 N.E.2d 1016. Claimant errs, however, in declaring that "more" must be *physical* activity. Sedentary activities can constitute sustained remunerative employment as well, including those administrative and executive decisions necessary to the management of a business.

{¶ 40} Claimant counters that there is no direct evidence that he exercised any administrative or executive authority in conjunction with the grocery stores. We find, however, sufficient evidence to permit the commission—in its evidentiary prerogative—to make this inference. See *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.

{¶ 41} As cited by the commission, claimant's own characterization of his employment status in the 1997 interrogatories was as ·"[s]*elf-employed* from 1987 to 1995, as owner of grocery store * * *; Rate of pay is $52,000 per year. No employment after 1995." (Emphasis added.) In that same document, claimant also stated that since 1993, he had lost "approximately one month's *work* for doctor's visits * * *. I have lost *work* time over the past four years every now

and then * * *. Altogether I have lost about $10,000 in income, calculated at a *salary* of $4,000–$5,000 per month." (Emphasis added.)

{¶ 42} These statements are "some evidence" that claimant himself considered his involvement with the store(s) to be "work" for which he was remunerated. His statements also established that these efforts were sustained. Even when viewed independently of the news articles describing claimant's drive and work ethic, claimant's statements are sufficient to justify a declaration of overpayment for the disputed period.

*April 7, 1997, through November 2, 2000*

{¶ 43} The commission declared this period to be overpaid based on claimant's employment at Enterprise Rent–a–Car and the Naples Daily News. Claimant does not deny that from August 7, 1997, through November 2, 2000, he engaged in sustained remunerative employment. He does deny participating in such activities from April 7, 1997, through August 6, 1997, and the evidence—as the court of appeals found—bears this out. The court of appeals, therefore, changed the overpayment start date to August 7, 1997. Claimant objects, asserting that since the commission erred on the start date, the entire overpayment declaration must be vacated. We reject this argument as untenable on its face.

*Fraud Declaration*

{¶ 44} Claimant criticizes the declaration of fraud, arguing that the requisite element of nondisclosure is lacking. See *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. Claimant bases his assertion on his belated disclosure of his employment at Enterprise Rent–a–Car. This, however, ignores the years that he did not disclose his employment in two other remunerative endeavors—his grocery store(s) and the newspaper route. The commission did not, therefore, abuse its discretion in declaring fraud.

{¶ 45} Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

———————

Cline, Cook & Weisenburger Co., L.P.A., Clint M. McBee and Steven B. Winters, for appellant.

Jim Petro, Attorney General, and Keith D. Blosser, Assistant Attorney General, for appellee.