DECISION
{¶ 1} Relator, Joseph R. Holdren, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its May 13, 2002 interlocutory order regarding the Bureau of Workers' Compensation's ("bureau") application for reconsideration and the commission's September 28, 2002 final order, which found permanent total disability ("PTD") overpayment and fraud, and to reinstate the staff hearing officer's ("SHO") March 29, 2002 order, which found no PTD overpayment or fraud.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission's interlocutory order did not provide a meaningful explanation of its reason(s) for granting the hearing that occurred on July 9, 2002. Also, the magistrate concluded that, even though the commission did not provide a meaningful explanation, relator did not "establish that there are no grounds on which the commission could properly exercise its continuing jurisdiction." Accordingly, the magistrate recommended that this court "grant a limited writ directing the commission to vacate its order on the bureau's application for reconsideration, and to vacate the decision on the merits as well, and to issue a new order that grants or denies the bureau's application for reconsideration in compliance with [State ex rel. Foster v. Indus. Comm.
(1999), 85 Ohio St.3d 320] * * *." Relator has filed objections to the magistrate's decision, and the matter is now before this court for independent review.
 {¶ 3} Relator argues that the magistrate's recommendation was based on a mistaken identification of relator's requested relief. While we agree that the magistrate's opening paragraph regarding relator's requested writ of mandamus is not completely accurate, we find that the magistrate has properly recognized relator's request in her conclusions of law. Also, we agree with relator's arguments pertaining to continuing jurisdiction to the extent relator argues that the magistrate misinterpreted the "physical activity" discussion in the May 13, 2002 order. As correctly stated by relator, the SHO, in the March 2002 order, did not treat "physical activity" as a prerequisite to finding fraud.
 {¶ 4} In spite of the above-described inaccuracies in the magistrate's decision, the magistrate properly noted that the interlocutory order insufficiently explained clear error in the SHO's March 2002 order. The magistrate correctly reasoned that the commission was not in compliance with Foster because it improperly exercised continuing jurisdiction by its interlocutory order when it set the PTD overpayment and fraud issues for reconsideration without providing an adequate explanation. See Foster, at 322. Even though the interlocutory order recognized the March 2002 order's clear error of law regarding the evidence of relator's knowledge that he could not work and collect PTD, it did not provide an adequate explanation of that clear error of law. The magistrate correctly concluded that a full writ is inappropriate in this case because relator has not established that there are no grounds on which the commission could properly exercise continuing jurisdiction under R.C. 4123.52. Cf. State ex rel. Royal v. Indus. Comm. (2002),95 Ohio St.3d 97.
 {¶ 5} Thus, notwithstanding our disagreements with the magistrate's decision that are mentioned above, we find that the interlocutory order did not comply with Foster and that relator has not established that no grounds exist on which the commission could properly exercise its continuing jurisdiction. Accordingly, we hereby overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent the decision is contrary to or inconsistent with the above discussion.[1] See supra at ¶ 3.
 {¶ 6} In accordance with the magistrate's decision, we hereby issue a limited writ of mandamus, returning the matter to the commission to vacate its orders of May 13, 2002, and September 28, 2002, and to issue a new order that grants or denies the bureau's application for reconsideration in compliance with Foster.
Objections overruled;
limited writ granted.
Byrant and Brown, JJ., concur.
 IN MANDAMUS {¶ 7} In this original action, relator, Joseph R. Holdren, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate the order in which it terminated his compensation for permanent total disability ("PTD") and found fraud by relator, and to issue an order that continues PTD compensation or, in the alternative, provides an adequate explanation of the commission's rationale.
Findings of Fact:
 {¶ 8} 1. In August 1987, Joseph R. Holdren ("claimant") filed an application for PTD compensation, which was granted in March 1991.
 {¶ 9} 2. In September 1999, the Ohio Bureau of Workers' Compensation ("bureau") received information that claimant was working, and it conducted an investigation.
 {¶ 10} 3. The bureau learned that, as of December 15, 1997, claimant signed an application for business insurance stating that he was a general contractor who built homes and that he had been in the business for 20 years.
 {¶ 11} 4. The insurance company issued a report stating that the insured was a contractor who built one or two homes per year and that the "[m]ajority of construction is completed by the insured himself." The report stated that the insured personally super-vised all the sublet work performed. Subsequently, claimant filed several claims for business losses, including a claim filed on July 2, 1998, in which claimant advised that the gate was secured "when his employees got on this site this morning."
 {¶ 12} 5. The bureau investigators videotaped claimant working at a construction site on various days from July 2000 to October 2000. They took pictures of claimant unloading drywall from a truck and obtained evidence that claimant told people that he was a general contractor who built houses for a living. Witnesses testified as to specific homes that claimant built.
 {¶ 13} 6. The bureau gathered additional documents, including a form dated February 6, 1998, which included the following language: "WARNING: If your payments under this authorization are to compensate you for total disability, you are not entitled to these payments if you are working. Working includes full or part-time employment." Claimant signed the form, which also stated that, by signing the form, he agreed that he was entitled to the benefits and would "promptly advise BWC should I become employed or otherwise ineligible to receive such benefits."
 {¶ 14} 7. On a document signed by claimant on January 10, 1999, he answered "No" when asked if he had returned to work during the last year.
 {¶ 15} 8. On a document dated January 29, 2000, claimant answered "No" when asked whether he was currently working or had worked part-time or full-time or on a volunteer basis since he was granted PTD benefits. Similarly, on a document dated January 12, 2001, claimant answered "No" when asked whether he was currently working or had worked part-time, full-time, or on a volunteer basis since he was granted PTD benefits.
 {¶ 16} 9. The bureau filed a motion to terminate PTD compensation and to declare fraud and an overpayment as of December 12, 1997.
 {¶ 17} 10. In March 2002, a hearing was held before a staff hearing officer ("SHO"). Claimant did not appear to testify. The SHO issued a decision terminating PTD as of July 12, 2000. The SHO declined to terminate PTD for the period before July 12, 2000, because there was no proof that claimant was "actually seen" engaging in "physical work activity." The SHO did not find fraud because the bureau "did not show" that claimant "knew he could not work and collect permanent total disability benefits."
 {¶ 18} 11. The bureau filed a request for reconsideration.
 {¶ 19} 12. In an interlocutory order dated May 13, 2002, the commission found that the bureau had presented sufficient evidence to warrant a hearing on the request for reconsideration, stating in part as follows:
 {¶ 20} "It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow.
 {¶ 21} "Specifically, the Staff Hearing Officer did not explain the reasons for rejecting the evidence that the injured worker knew he could not work and receive permanent total disability.
 {¶ 22} "Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration filed 04/15/2002 is to be set for hearing to determine if the alleged mistake of fact and mistake of law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction."
 {¶ 23} 13. In July 2002, the commission held a hearing and decided to grant the bureau's request for reconsideration. It stated as follows, in part:
 {¶ 24} "* * * [T]he Staff Hearing Officer order contains a clear mistake of law in that the Staff Hearing Officer failed to explain the reason for rejecting evidence that the injured worker knew he could not work and receive permanent and total disability compensation. The Staff Hearing Officer had before him a document signed by the injured worker on 02/06/1998 that stated `you are not entitled to these payments if you are working. Working includes full or part-time employment.' Despite the existence of this evidence, the Staff Hearing Officer found that the Bureau of Workers' Compensation had not shown that the injured worker knew he could not work and collect permanent total disability, without further explanation. The Staff Hearing Officer did not cite any evidence in support of this finding or explain why the evidence to the contrary was rejected. As a result, the Staff Hearing Officer order clearly violates State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481.
 {¶ 25} "Based upon this clear mistake of law, the Industrial Commission finds that continuing jurisdiction exists to address the Administrator's motion filed 10/05/2001."
 {¶ 26} 14. Next, the commission addressed the bureau's motion to terminate PTD and declare fraud. In a four-page, single-spaced order (provided at pages 160-163 of the stipulated evidence), the commission reviewed the evidence in detail and made specific findings of the elements of fraud. The commission found fraud dating back to February 6, 1998, and declared an overpayment of PTD from that date forward, to be collected under R.C. 4123.511(J).
Conclusions of Law
 {¶ 27} In this original action in mandamus, the claimant asks the court to review two different orders. First, the claimant argues that the interlocutory order of May 2002, stating that there was sufficient evidence to hold a hearing on the request for reconsideration, constituted an abuse of discretion. Second, the claimant argues in the alternative that, if the commission was within its discretion to hold the hearing in July 2002, the subsequent order was an abuse of discretion.
 {¶ 28} Several established principles apply to the court's consideration. First, after the commission awards PTD compensation, it may exercise continuing jurisdiction to terminate compensation when the claimant (1) has engaged in activities inconsistent with permanent total disability, (2) has engaged in sustained remunerative employment, or (3) is capable of engaging in some form of sustained remunerative employment. State ex rel. Kirby v. Indus. Comm., 97 Ohio St.3d 427,2002-Ohio-6668; State ex rel. Frazier v. Conrad (2000), 89 Ohio St.3d 166;State ex rel. Schultz v. Indus. Comm., 96 Ohio St.3d 27, 2002-OHIO-3316;State ex rel. Holt v. Indus. Comm. (Oct. 26, 2000), Franklin App. No. 00AP-1.
 {¶ 29} Next, the magistrate notes that the concepts of "work" and "employment" are not limited to physical activity or manual labor. Stateex rel. Ackerman v. Indus. Comm., 99 Ohio St.3d 26, 2003-Ohio-2448. The bureau need not show "physical activity" for a termination of PTD because sedentary activities constitute sustained remunerative employment, including "those administrative and executive decisions necessary to the management of a business." Id. at ¶ 39. For example, a person who supervises others and orders supplies may be engaged in work activity. E.g., State ex rel. Kasler v. Indus. Comm. (Feb. 15, 1996), Franklin App. No. 95AP-341; State ex rel. Nahod v. Indus. Comm. (Sept. 2, 1999), Franklin App. No. 98AP-1157.
 {¶ 30} Of course, the law does not preclude a PTD recipient from having personal investments and giving reasonable attention to them. SeeAckerman, supra (noting that the mere fact of business ownership, without more, does not defeat eligibility for PTD compensation). In addition, in cases involving temporary total disability ("TTD"), the courts have recognized that, where the injured worker had a preexisting business to which he gave substantial labor and supervision before the injury, and where he was forced to hire laborers to replace his physical contribution during his recuperation, the claimant may engage in some supervisory activities to preserve his business during recuperation while receiving TTD compensation. State ex rel. Ford Motor Co. v. Indus. Comm.,98 Ohio St.3d 20, 2002-Ohio-7038; see, also, State ex rel. Am. Std.,Inc. v. Boehler, Franklin App. No. 01AP-1138, 2002-Ohio-3323. Depending on the circumstances, however, the commission may conclude that a claimant's activities in operating a business are not consistent with receipt of disability compensation. See Nahod; Schultz, supra; State exrel. Rousher v. Indus. Comm. (Feb. 3, 2000), Franklin App. No. 99AP-286. The courts have held that, in considering whether the claimant has shown a capacity to perform sustained remunerative employment, the commission may consider the claimant's participation in part-time work and irregular work. Kirby, supra; see, also, State ex rel. Toth v. Indus. Comm.
(1997), 80 Ohio St.3d 360.
 {¶ 31} With respect to volunteer work, the magistrate notes that such work may be inconsistent with receipt of PTD if it demonstrates a capacity to perform sustained remunerative work. See Schultz, supra, at ¶ 61 (stating that a claimant who performs sustained "remunerable" activity without pay demonstrates that he or she is capable of doing that same work for remuneration); State ex rel. Alesci v. Indus. Comm.,97 Ohio St.3d 210, 2002-Ohio-5932 ¶ 18 (stating that a claimant who does sustained "remunerable" activity without pay demonstrates the capability of doing that same work for remuneration); Kirby, supra, at ¶ 11 (stating that, "even if claimant charged no money at all, his ability to do these jobs contradicts his assertion that he is medically and vocationally unable to do any work"). See, also, State ex rel.Menough v. Indus. Comm., Franklin App. No. 01AP-1031, 2002-Ohio-3253 (adopting magistrate's conclusions relating to PTD and fraud, including the conclusion that, if a PTD recipient were donating clerical services to a charity five hours per day, five days per week, that activity could support a termination of PTD regardless of the absence of monetary gain). However, in cases involving TTD, volunteer work does not preclude TTD compensation where the claimant is not remunerated and the duties are not medically inconsistent with the claim of inability to perform the former position of employment. State ex rel. Parma Community Gen. Hosp.v. Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336.
 {¶ 32} The magistrate further observes that the commission, as the finder of fact, has broad discretion to determine whether the evidence shows that the claimant is capable of performing sustained remunerative employment. See, generally, State ex rel. Pass v. C.S.T. Extraction Co.
(1996), 74 Ohio St.3d 373; State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18. For example, in [State ex rel.] East Ohio GasCo. v. Indus. Comm. (May 18, 2000), Franklin App. No. 99AP-911, the employer presented videotapes that showed claimant performing strenuous activity and heavy lifting on several occasions, which tended to show that claimant had not accurately represented his limitations to the examining physicians. The claimant testified, however, that he sometimes had good days and could perform such activities briefly. The commission, in its discretion as the finder of fact, accepted claimant's testimony and rejected the argument that the activities shown on the videotape were inconsistent with PTD. In contrast, the commission in the present case viewed the evidence as indicative of physical capacities and skills inconsistent with PTD, and it cited evidence to support its findings of fact.
 {¶ 33} In regard to fraud, the magistrate notes that it is well settled that a person's silence, where there is a duty to disclose, constitutes a misrepresentation that can support a finding of fraud.Ackerman, supra, at ¶ 44. See, also, Schubert v. Neyer (1959), 165 N.E.2d 226, 229; State v. Warner (1990), 55 Ohio St.3d 31, 53.
 {¶ 34} Next, with respect to interlocutory orders that authorize a hearing on the issue of whether to grant a request for reconsideration, the magistrate notes that the commission may invoke its continuing jurisdiction to alter a prior order if it finds that the prior order was based on a clear error of law or fact or based on fraud, or upon other findings not at issue here. See, generally, State ex rel. Nicholls v.Indus. Comm. (1998), 81 Ohio St.3d 454.
 {¶ 35} The Ohio Supreme Court has held that an order granting reconsideration, that is, an order granting a new hearing on the merits, is an abuse of discretion when the order is based on the mere "possibility" of unspecified error. Id.; State ex rel. Chaffins v. Indus.Comm. (1998) 82 Ohio St.3d 268. Likewise, the commission abuses its discretion when it authorizes a new hearing upon a finding of "clear error" but fails to identify the error. State ex rel. Foster v. Indus.Comm. (1999), 85 Ohio St.3d 320.
 {¶ 36} In Foster, the commission granted a new hearing on the merits because the application for reconsideration "presented probative evidence of a clear mistake of fact and of law in the order from which reconsideration is sought." Id. at 321. The commission gave no indication, however, of what the specific mistake might be. The Supreme Court explained that the commission, in an order granting reconsideration of the merits, must "identify" the error and "reveal, in a meaningful way, why [continuing jurisdiction] was exercised." Id. at 322.
 {¶ 37} In State ex rel. Royal v. Indus. Comm. (2002),95 Ohio St.3d 97, the court again reviewed an interlocutory order in which the commission had scheduled a reconsideration hearing based on the mere "possibility of an error." The procedural posture was different, however, in that the employer had made a second request for reconsideration after the first request for reconsideration was denied.
 {¶ 38} In the present action, the magistrate finds at least one glaring error of law in the SHO's order. The SHO indicated that, in order to find fraud, it was necessary for the commission to have evidence that someone saw the claimant engaging in "physical" work activity over the course of the entire period at issue. That is simply not correct. Work need not be physical. E.g., Ackerman; Kasler, supra. Further, the issue before the commission was not limited to whether the claimant actually engaged in sustained remunerative employment; PTD may be terminated where the claimant's activities demonstrate that he is capable of sustained remunerative employment. In addition, the bureau was not required to show that the claimant engaged in a continuous period of remunerative employment for the entire period at issue; the bureau was required to show only that, as of the date at issue, the claimant had demonstrated acapacity for sustained remunerative employment. Kirby, supra, at ¶ 22.
 {¶ 39} However, the reason given by the commission for setting the hearing was that the SHO "did not explain the reasons for rejecting the evidence that the injured worker knew he could not work and receive permanent total disability." Although the magistrate finds that the SHO's order was patently flawed, the magistrate nonetheless feels constrained to accept claimant's argument that, under Foster, the explanation given by the commission is not sufficient. The magistrate accepts the argument that the justification given in the interlocutory order was insufficient because, if a party sought relief in mandamus arguing merely — without further elaboration — that the hearing officer failed to state a reason for rejecting an item of evidence, that argument would not support mandamus relief in most cases because a hearing officer ordinarily has no obligation to explain why an item of evidence was rejected.
 {¶ 40} The general rule is that, when a finding of fact is set forth, the hearing officer is required to cite only the evidence on which he or she affirmatively relied in making the finding of fact. State exrel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. For example, where a hearing officer has relied on a specific medical report in making a particular finding, the hearing officer has no obligation to explain why he or she rejected the other, contrary reports. Id.
 {¶ 41} However, it is important to recognize that there are situations where the commission's decision was based, not on any affirmative reliance on a particular item of evidence, but on a rejection of the movant's uncontroverted evidence. In such circumstances, the commission has discretion to reject the uncontroverted evidence presented by the party with the burden of proof, but it must explain why it has rejected the uncontroverted evidence. The commission may find that the proffered evidence was not sufficient to meet the party's burden of proof, or it may find that the proffered evidence is defective in some way and cannot constitute "some evidence" on which the commission may rely, or was simply not persuasive. In such situations, however, where the commission rejects uncontroverted evidence, it must set forth a reason. See State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649,655 (stating that there must be a reasonable basis for rejecting uncontroverted medical reports and that the basis should be in the record); State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203
(explaining that a brief explanation of the rationale is necessary to permit meaningful judicial review); State ex rel. Stewart v. ColumbusSchools (May 30, 2001), Franklin App. No. 01AP-80 (Magistrate's Decision), adopted (Sept. 18, 2001). See, also, State ex rel. Edgertonv. Vencor, Inc. (Apr. 30, 1999), Franklin App. No. 98AP-1366 (Magistrate's Decision), adopted June 29, 1999 (Memorandum Decision);State ex rel. Woolever v. The Fishel Co. (Nov. 30, 1998), Franklin App. No. 98AP-643 (Magistrate's Decision), adopted May 20, 1999 (Memorandum Decision); State ex rel. Cincinnati Gear Co. v. Indus. Comm. (Oct. 28, 1998), Franklin App. No. 98AP-426 (Magistrate's Decision), adopted March 4, 1999 (Memorandum Decision).
 {¶ 42} In the present matter, in the interlocutory order of May 2002, the commission stated only that the SHO did not state a reason for rejecting evidence that the claimant knew he could not work while receiving PTD compensation. It appears that, under Foster, this brief statement, standing alone, does not provide a "meaningful explanation" as to why continuing jurisdiction is being exercised. If the commission granted the hearing because there appeared to be uncontroverted evidence indicating that claimant knew he was not permitted to receive PTD compensation while employed and the SHO appeared to be unaware of that evidence or to have rejected it under an incorrect standard, and/or that the SHO's order was defective because the SHO failed to provide an adequate explanation of the rationale as required, or if the commission granted the hearing for some other reason, it was obliged to state that reason specifically.
 {¶ 43} Because the commission's interlocutory order did not provide a meaningful explanation of its reason(s) for granting the hearing, the magistrate recommends that the court grant a limited writ directing the commission to vacate its order on the bureau's application for reconsideration, and to vacate the decision on the merits as well, and to issue a new order that grants or denies the bureau's application for reconsideration in compliance with Foster, supra. Claimant is not entitled to a "full writ." Although the commission did not provide an adequate explanation, the magistrate is not convinced that, as a matter of law, it cannot do so. This case is not like Royal, supra, in which the court found that there was no indication of any error that would warrant an exercise of continuing jurisdiction. Here, claimant has not established that there are no grounds on which the commission could properly exercise its continuing jurisdiction. Therefore, the magistrate recommends a limited writ as described above.
P.A. Davidson, Magistrate.
[1] For purposes of clarity, we supplement the magistrate's finding of fact number 14. We note that, in addition to finding fraud from February 6, 1998 forward, the commission also found PTD overpayment from December 15, 1997 forward.