THE STATE EX REL. TIMMERMAN TRUSS, INC., APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; WAGNER, APPELLANT.

[Cite as *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.,* 102 Ohio St.3d 244, 2004-Ohio-2589.]

(No. 2003–1777—Submitted April 13, 2004—Decided June 9, 2004.)

**Per Curiam.**

{¶ 1} On September 23, 1998, appellant-claimant, Chad Wagner, severely injured his right hand while using a table saw at work. In addition to causing numerous deep lacerations, several fractures, and nerve damage, claimant's injury eventually required amputation of the right thumb tip and entire second finger.

{¶ 2} Office notes of claimant's attending physician, Dr. H. Brent Bamberger, show steady recovery and in early March 1999, claimant was released to light-duty work. A previously undisclosed fracture temporarily interrupted progress, and it was during this time that claimant's badly damaged second finger was surgically resected. By October 1999, however, he was again doing "quite well" and was to return to unspecified work in early November. After November 1999, no further doctor appointments were scheduled.

{¶ 3} In spring 2000, claimant fractured his right ring finger in a fight. A rod was inserted and recovery resumed. Dr. Bamberger noted in June that claimant was "to continue on a light duty job at work."

{¶ 4} In late 2001, claimant moved the Industrial Commission of Ohio for a "permanent/partial award due to amputation and fusion." Four primary pieces of evidence were before the district hearing officer. The first was a March 11, 2002 medical file review from Dr. W. Gibson, who after evaluating and accepting the findings of previous examiners, wrote:

{¶ 5} "[Claimant] has undergone multiple surgeries (mostly in an attempt to save the middle finger). He, however, had the middle finger amputated, and has Kerchner wires and ankylosis of other joints of the fingers, which, in effect, renders this hand as useless for functional purposes.

{¶ 6} "He has lost thumb/index finger opposition (pinch-point) and the combination of neurosensory loss, plus neuromotor loss and ankylosis, allows for the conclusion that Mr. Wagner has lost the use of his right hand. His dexterity and functional capacity are near zero and the record clearly shows a loss of use has taken place regarding the right hand.

{¶ 7} "Based on medical documentation in the file there is sufficient evidence to support a loss of use of the right hand as being causally related to the 9–23–98 injury of record. * * *

{¶ 8} "ADDENDUM: Mr. Wagner now has a total loss of use of the entire right hand as a direct result of his 9–23–98 injury of record. This Addendum is for the purposes of clarity."

{¶ 9} Dr. Bamberger concurred in that opinion on April 22, 2002, stating:

{¶ 10} "This was a significant injury and it is my opinion [that] Chad would qualify for a loss of use of the right hand. He is right-hand dominant and his employment at the time of injury involved physical labor. Based on his injury, his employment history, and the fact that this is his dominant hand, I would concur with the loss of use opinion issued by the BWC."

{¶ 11} Days later, Dr. Ron M. Koppenhoefer examined claimant. Among other things, he noted:

{¶ 12} "Currently he is taking no medications for problems involving his right dominant hand. He indicates he has some symptoms. In cold weather, which he defines as 35 degrees to 40 degrees, he states his hand turns cold and can become slightly bluish in nature. He does wear a glove which helps his problem. He indicates he is able to work in construction and do labor activities. He states he does have problems in regards to decreased strength involving his right hand, and gripping with his hand spread also causes him some difficulty. He states he has soreness after a hard day's work. This usually occurs when he hammers with his right arm. He does not wear a protective glove. He denies having any numbness or tingling except when his hand is cold."

{¶ 13} He concluded:

{¶ 14} "Based on my examination, there is no evidence to indicate that Mr. Wagner has a complete total and permanent loss of function involving his right hand. He does have some limitations in regards to the use of his right hand brought about by the injury which he sustained on September 23, 1998. These limitations are related to the amputation of his right third finger and the slight decreased sensation as well as decreased motion which has been documented in this report. When inspecting his hand, his hand was noted to be well callused, which corresponds with his clinical history of being able to use his hand when doing construction labor activities. He indicates he takes no medication for discomfort involving his right hand and has only minimal discomfort in cold weather, which is corrected by the use of a glove."

{¶ 15} A final significant source of evidence was a packet of unsworn—some undated—statements from claimant's fellow workers. All attested to claimant's total resumption of his prior duties with his injured hand. One co-worker wrote the following representative statement:

{¶ 16} "I was working there when he first injured his right hand, and continued to work with him when he returned to work. In the time since his return to

work, he has become a very productive worker. As far as how he does with his right hand while at work, he does exactly the same work that everyone else does, and uses both hands just like he did before the injury. He doesn't have any trouble with using a hammer or grasping boards or for that matter anything you would normally do with your hands."

{¶ 17} Several of these co-workers also socialized with claimant outside of work. Claimant was allegedly able to play golf, volleyball, and basketball, and to swim and to water-ski with no discernible problems or complaints.

{¶ 18} The district hearing officer found that claimant had not sustained a total loss of use of the right hand, based on Dr. Koppenhoefer's report and a November 4, 1999 Bamberger report that released claimant to return to his "usual duties" without restriction. A staff hearing officer vacated that order and granted an award for the total loss of the right hand based on Dr. Gibson's report and Dr. Bamberger's April 22, 2002 letter. Further appeal was refused.

{¶ 19} The employer, appellee Timmerman Truss, Inc., filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging a commission abuse of discretion in granting a total-loss-of-use award. The court of appeals, speaking through its magistrate, held that the evidence relied upon by the commission did not support such an award under the standards set forth in *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190. The court questioned, however, whether claimant could recover under an alternate provision in R.C. 4123.57(B), and returned the cause for further consideration and an amended order.

{¶ 20} This cause is now before this court upon an appeal as of right.

{¶ 21} Scheduled loss awards under R.C. 4123.57(B) (formerly R.C. 4123.57[C]) were originally confined to amputees. See *State ex rel. Bohan v. Indus. Comm.* (1946), 146 Ohio St. 618, 33 O.O. 92, 67 N.E.2d 536, paragraph two of the syllabus, citing former G.C. 1465–80. Now, however, these awards include total loss of use without severance where the loss is "to the same effect and extent as if [the body part] had been amputated or otherwise physically removed." *Walker*, 58 Ohio St.2d at 403, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 22} For a hand injury, the amount of compensation depends on the affected part. The loss of certain joints can translate into a full-digit loss, the award for which ranges from 15 weeks for the little finger to 60 weeks for the thumb. R.C. 4123.57(B). The loss of the whole hand brings 175 weeks of compensation and for injuries in the intervening range, R.C. 4123.57(B) provides:

{¶ 23} "If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury * * * is such

that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand."

{¶ 24} Claimant's motion vaguely requested a "permanent/partial award due to amputation and fusion." The court of appeals, proceeding from the premise that claimant was seeking maximum compensation, was uncertain as to the theory upon which the commission had based its 175 weeks of compensation. If the theory was "flat loss," the court of appeals found that the cited evidence did not support the award. If the theory was the "two fingers plus" concept, the court found that it could not review the order as it was not explained sufficiently. The court, therefore, returned the cause for clarification and an amended order. Claimant challenges the return, arguing that the cited evidence supported a flat award and that no further explanation is required. For the reasons to follow, the court of appeals' judgment is affirmed.

{¶ 25} The commission relied on the reports of Drs. Bamberger (April 22, 2002) and Gibson (March 11, 2002, and addendum). Both reports are seriously flawed. Review of the former raises immediate questions as to the author's awareness of (1) the *Walker* standard of loss and (2) claimant's postrecovery activities. Nothing in Dr. Bamberger's report indicates that the claimant's degree of loss is the functional equivalent of an amputation. He instead recites the claimant's history without discussing his current functional residuals and bases his loss-of-use assessment on claimant's employment history and the fact that the dominant hand is involved.

{¶ 26} Ironically, Dr. Bamberger's reference to claimant's work history ties into the second concern above and raises the question whether the doctor was considering claimant's pre- or postinjury history. The record contains numerous co-worker statements that—while containing evidentiary deficiencies of their own—all attest to claimant's resumption of his former position of employment and of other demanding outdoor pursuits. Claimant himself told Dr. Koppenhoefer in May 2002 that he was able to do construction work and other labor with his injured hand. This is critical because, under *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576, ¶ 64, medical evidence of disability or loss can be impeached by evidence of actual work or other physical activity inconsistent with that assessment.

{¶ 27} The court of appeals' criticism of Dr. Gibson's report is more problematic. First, its comment that it was "merely" a file review was inappropriate. The evidentiary acceptability of a medical review is long settled, being considered the equivalent of an expert's answer to a hypothetical question. *State ex rel. Wallace*

*v. Indus. Comm.* (1979), 57 Ohio St.2d 55, 59–60, 11 O.O.3d 216, 386 N.E.2d 1109. It demands only that the reviewer examine all of the medical evidence generated prior to that time and accept those findings of fact. Id. Dr. Gibson affirmed that he had performed that review and accepted the facts.

{¶ 28} The court of appeals found the report defective nevertheless because Dr. Gibson "appears to have relied primarily if not solely on the reports of Dr. Bamberger," and may have relied "on reports of Dr. Bamberger that are barred from evidentiary consideration." Presumably, the court is referring to the April 22, 2002 report discussed above, since it is the only one the court reviewed. That concern is undermined, however, by the fact that that report was issued one month *after* Dr. Gibson's report and addendum.

{¶ 29} Unlike Dr. Bamberger's April 22, 2002 report, Dr. Gibson's report does set forth the findings underlying his opinion and appears to be more cognizant of the *Walker* loss standard. Gibson cites claimant's amputation and the fact that claimant has "Kerchner wires and ankylosis of other joints of the fingers, which, in effect, renders this hand as useless for functional purposes." He also notes neurosensory and neuromotor loss as well as the absence of thumb/index finger opposition. With claimant's dexterity and functional capacity "near zero," Dr. Gibson concluded that there was a total loss of use.

{¶ 30} Under most circumstances, therefore, Dr. Gibson's report alone would support the commission's award. Here, however, *Schultz* demands that the medical assessment be viewed in the context of claimant's postrecovery physical and work activities. Id., 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576, ¶ 64.

{¶ 31} For this reason, the cause must be returned for further consideration and an amended order. The commission has never addressed claimant's postrecovery activities or the reliability of the evidence describing these activities. This is crucial to further review. A return, moreover, will afford the commission the opportunity to address the possibility of total loss under the "two fingers plus" provision of R.C. 4123.57(B) cited by the court of appeals.

{¶ 32} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Hochman & Roach Co., L.P.A., Gary D. Plunkett and Mark Kalafatas, for appellant.

Bricker & Eckler, L.L.P., and Thomas R. Sant, for appellee.