DECISION
{¶ 1} Relator, Carl C. McDaniel, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that terminated relator's permanent total disability ("PTD") compensation on grounds that relator had been engaged in sustained remunerative *Page 2 
employment during the time he was receiving PTD compensation and had committed fraud, and ordering the commission to reinstate his PTD compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court grant relator's request for a writ of mandamus. (Attached as Appendix A.) The commission has filed objections to the magistrate's decision.
 {¶ 3} The crux of the commission's objections is that the present circumstances require termination of PTD and a fraud finding, pursuant to the three criteria enunciated in State ex rel. Lawson v. MondieForge, 104 Ohio St.3d 39, 2004-Ohio-6086, which aid in addressing how active one may be and still remain eligible for PTD. We disagree. As the magistrate found, when comparing the circumstances in the present case with those in Lawson, if the Ohio Supreme Court did not find that the PTD claimant was capable of sustained remunerative employment in that case, we cannot find such in the instant case. In Lawson, the claimant's activities included 207 activities engaged in by the claimant from 1993 through 2001, such as refuse disposal; placing flags in village streets for holidays; driving a dump truck; loading a couch, lawn mower, and other items into the dump truck, which clearly exceeded his restrictions; kicking and breaking apart a table; hoisting a chair into the dump truck; plowing snow; occasional lawn mowing with a push lawn mower, trimmer, and riding lawn mower; mowing five residents' lawns for pay, purchasing hardware and gasoline; unspecified truck and plow maintenance; and hauling gravel. The claimant in Lawson did almost all of this work for free, but received from the village a salary of $200 to $300 per year, plus a bonus of $6 per hour for plowing. *Page 3 
 {¶ 4} In the present case, relator cut one lawn in 2001; mowed a church's lawn twice for $90 in 2002; and mowed three lawns during the growing season in 2003: one for free, one for $30, and one for $20. Relator used a riding lawn mower, a push lawn mower, a grass trimmer, and a blower. These activities are substantially less strenuous and less consistent than those in Lawson, and there is no evidence that the activities were outside of relator's restrictions. Admittedly, a complicating factor in the present case is that relator was operating a business and advertising such, while the claimant in Lawson was engaging in volunteer activities largely associated with his position on the city council. Nevertheless, we do not find that this fact is significant enough to take the current case out of the ambit of the circumstances and holding in Lawson. Notably, although the commission complains that the fact relator was advertising the business and had changed the name in order to obtain more business demonstrates that relator could engage in even more sustained, ongoing activities, any hypothetical increase in the frequency or intensity of physical activities in the future is not relevant to the present case, although it may be relevant in the future. While we do not condone relator's failure to inform the commission of his activities and his evasiveness when confronted by the investigators from the Bureau of Workers' Compensation, we cannot find that there is some evidence of relator's ability to engage in sustained remunerative employment. Therefore, the commission's objections are overruled.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of the commission's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and grant relator's request for a writ of *Page 4 
mandamus, ordering the commission to vacate its order terminating relator's compensation and finding fraud and ordering the commission to reinstate that award.
Objections overruled; writ of mandamus granted.
 TYACK, J., concurs. McGRATH, J., dissents.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 14} Relator, Carl C. McDaniel, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated relator's permanent total disability ("PTD") compensation on grounds that relator had been engaged in sustained *Page 8 
remunerative employment during the time that he was receiving PTD compensation and also finding fraud and ordering the commission to reinstate his PTD compensation.
Findings of Fact: {¶ 15} 1. Relator sustained a work-related injury on August 22, 1987, while employed with the Butler County Sheriff's Office. Relator's workers' compensation claim has been allowed for "fractured ribs 5th, 8th and 9th; herniated disc L4-5, L5-S1."
 {¶ 16} 2. On January 22, 1988, relator underwent the following surgery: "Partial hemilaminectomy, L4-L5 and discectomy [sic] L4-L5, and partial hemilaminectomy L5-S1, proximal foraminatomy, L5 root and S1 root."
 {¶ 17} 3. Relator received temporary total disability compensation through January 28, 1991.
 {¶ 18} 4. On June 26, 1990, relator filed an application for PTD compensation.
 {¶ 19} 5. By order dated August 20, 1991, the commission granted relator's application for PTD compensation beginning January 29, 1991. The commission relied upon the November 29, 1990 report of Set Shahbabian, M.D., a neurosurgeon, who indicated that relator could not work, was having trouble sleeping, and needed to have a neighbor put a handlebar in the tub area so that relator could get in and out of the tub. Dr. Shahbabian indicated that relator had clearly reached maximum medical improvement and that, in his opinion, he was totally disabled. The commission also relied upon the April 19, 1990 report of Dr. Doran M. Christensen, who stated that relator was unable to do any work around his house, he was unable to sit, stand or walk for more than 15 to 30 minutes without increasing discomfort, and he moves slowly to sitting or standing positions. Dr. Christensen opined that relator was totally and permanently disabled. *Page 9 
 {¶ 20} 6. In 2003, the Ohio Bureau of Workers' Compensation ("BWC") special investigations unit ("SIU") received an allegation that relator was operating and working a lawn care business while receiving PTD compensation. As a result of the investigation, the following facts were established: relator began a lawn care business in 2001 under the name Residential Lawn Mowing; during that year, relator cut one lawn; in 2002, relator mowed the yard for the St. Clair Baptist Church two times and received $90; relator changed the name of his lawn care service to American Lawn Service; in 2003, relator was cutting three lawns, one for free, one for $30 cash, and the last for $20 cash; relator utilized a riding mower, a push mower, a gas powered trimmer, and a gas powered blower; during surveillance on September 9, 2003, the SIU agents observed relator cut three lawns; during their surveillance on September 16, 2003, the SIU agents observed relator cut two lawns; when initially questioned by the SIU agents, relator stated that he was not operating a lawn care business and he was not working; after being informed that the agents had conducted surveillance, relator eventually conceded that he had been cutting certain lawns.
 {¶ 21} 7. The BWC filed a motion to terminate relator's PTD compensation and asked that the commission find that relator had engaged in fraud.
 {¶ 22} 8. The motion was heard before a staff hearing officer ("SHO") on January 27, 2006, and resulted in an order terminating relator's PTD compensation as follows:
 The Hearing Officer finds that the evidence indicates that the injured worker has been engaged in sustained remunerative employment activity from 05/10/2001 which is inconsistent with the receipt of permanent and total disability compensation. The Hearing Officer finds that the evidence *Page 10 
indicates that the injured worker was paid for his work of cutting grass from various individuals. The Hearing Officer finds that this activity of cutting grass was clearly remunerative in nature.
 The Hearing Officer finds that the injured worker's employment was sustained in nature. The Hearing Officer finds that he had various lawn job[s] over the years 2001 and 2003. The injured worker's activity has not confined to a short period of time but lasted over a 3 year period. Further the Hearing Officer finds that the lawn cutting activity was not sporadic in nature but involved numerous clients and involved lawn cutting activities on numerous occasions for each client. The Hearing Officer further finds that the injured worker had business cards with his company name imprinted on it, a sign on the side of his truck advertised his business. The injured worker also used his own tractor, push mowers, power trimmer and gas power blower on his jobs. Further, the injured worker took out advertisements in a local newspaper advertising and soliciting jobs. By taking out advertisements and soliciting business the injured worker clearly intended that his work activity be done on a sustained basis.
 Based on the information submitted in the Bureau of Workers' Compensation special investigation's unit package dated 12/29/2004, the Hearing Officer finds that the injured worker has engaged in sustained remunerative employment activity as of 05/10/2001 which is inconsistent with the payment of permanent and total disability compensation benefits.
 Therefore the Hearing Officer finds that the injured worker is not entitled to permanent and total disability benefits as of 05/10/2001, and terminates permanent and total disability benefits as of that date. The Hearing Officer declares that an overpayment of permanent and total disability benefits from 05/10/2001 to 11/27/2004 and continuing.
The SHO also determined that relator had engaged in fraudulent activity. *Page 11 
 {¶ 23} 9. Relator's request for reconsideration was denied by order of the commission mailed April 8, 2006.
 {¶ 24} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 25} As more fully explained below, it is this magistrate's conclusion that this court should issue a writ of mandamus in the present case.
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 27} Both parties agree that the Supreme Court of Ohio's decision inState ex rel. Lawson v. Mondie Forge, 104 Ohio St.3d 39, 2004-Ohio-6086, is dispositive of this case. In Lawson, the claimant had performed heavy labor during his working career and, during much of this time, had also served as a council member in his community. Claimant was awarded PTD compensation effective 1994 after the commission *Page 12 
determined that the low-stress sedentary jobs to which claimant was limited were foreclosed to him due to his lack of skills and education. In 2001, the BWC reopened claimant's case and conducted surveillance. The BWC noted 207 activities engaged in by the claimant between 1993 through 2001, most of them for the benefit of his community. The predominant activity listed was refuse disposal which involved claimant driving the refuse truck. Other activities including putting up flags on community streets for various holidays, plowing snow, purchasing hardware and gas, unspecified truck and plow maintenance, and hauling gravel. Claimant received between $200 and $300 per year for his community activities plus a bonus of $6 per hour for plowing snow. Claimant was observed performing some tasks which were outside of his physical limitations, such as, assisting in loading a couch and lawn mower onto a truck. The court also noted that claimant occasionally did some lawn mowing with both a push and riding mower. Because the Supreme Court's decision did not specify how much lawn mowing activity claimant performed, this magistrate reviewed this court's decision in State exrel. Lawson v. Mondie Forge Co., Franklin App. No. 03AP-157,2003-Ohio-5347, and learned that claimant cut the grass for the community's property and ditch lines, using a push mower and a weed eater, and also cut about five lawns for pay for residents.
The Supreme Court of Ohio identified the issues raised as follows:
 Three questions are posed directly: Did the commission abuse its discretion in (1) terminating PTD, (2) declaring overpaid all PTD after May 14, 1994, and (3) finding that claimant committed fraud? Cumulatively, they invoke a critical issue that has always lurked in the periphery of the PTD debate: How active can a person be and still be deemed eligible for PTD?
Id. at ¶ 15. Thereafter, the court stated as follows: *Page 13 
 PTD pivots on a single question: Is the claimant capable of sustained remunerative employment? State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167 * * * Payment of PTD is inappropriate where there is evidence of (1) actual sustained remunerative employment, State ex rel. Kirby v. Indus. Comm., 97 Ohio St.3d 427, 2002-Ohio-6668 * * *; (2) the physical ability to do sustained remunerative employment, State ex rel. Schultz v. Indus. Comm., 96 Ohio St.3d 27, 2002-Ohio-3316 * * *; or (3) activities so medically inconsistent with the disability evidence that they impeach the medical evidence underlying the award. See State ex rel. Timmerman Truss, Inc. v. Indus. Comm., 102 Ohio St.3d 244, 2004-Ohio-2589[.] * * *
Id. at ¶ 16. (Emphasis sic.)
 {¶ 28} In Lawson, the commission had determined that claimant had been engaged in physical activity since 1993 which demonstrated that he was capable of performing sustained remunerative employment. The commission noted that the evidence presented established a regular pattern of work activity some of which was physical activity well in excess of the sedentary restrictions relied on by the commission to grant claimant's PTD application.
 {¶ 29} In reviewing claimant's case in Lawson, the Supreme Court of Ohio ultimately determined that the evidence did not support the commission's decision to terminate his PTD compensation. Specifically, the court found that none of the three criterion were met. The court noted that the commission had declined to classify the claimant's activities as remunerative and instead characterized them as potentially remunerative and medically inconsistent with his allegation of permanent total disability. The court concluded that claimant's activities did not demonstrate an ability to perform sustained remunerative employment. The court noted that the BWC had only observed claimant exceed his physical limitations a few times and that the commission had viewed *Page 14 
claimant's activities out of context. The court found that the majority of the claimant's activities were within his restrictions and ultimately characterized his lawn mowing as occasional.
 {¶ 30} Considering the fact-pattern in Lawson, and comparing it to the fact-pattern in the present case, this magistrate concludes that the commission abused its discretion in finding that relator's lawn mowing activities constituted sustained remunerative employment. The claimant in Lawson was mowing five lawns a week and, at most, relator in the present case was only mowing three lawns a week. As such, relator's lawn mowing activity must be characterized as occasional and does not establish that relator was actually engaged in sustained remunerative employment. Furthermore, unlike the claimant in Lawson, relator herein was not observed performing any other activities and it is unclear whether or not his lawn mowing was actually outside his physical limitations.
 {¶ 31} Because relator's activities in the present case are significantly less than the activities performed by the claimant inLawson, the magistrate finds that the commission has abused its discretion in determining that relator was actually engaged in sustained remunerative employment and in terminating his PTD compensation and making a finding of fraud. Furthermore, because the Lawson court also concluded that the claimant's activities did not demonstrate the physical ability to perform sustained remunerative employment nor activities so medically inconsistent with the disability evidence that they impeach the medical evidence underlying the award, this magistrate finds that relator's activities here likewise do not meet either of those two criterion. Lastly, the fact that the commission found that relator exhibited an "intent" to engage in sustained remunerative employment, the evidence did not demonstrate that he actually was or that he had the *Page 15 
actual ability to do so. For those reasons, the magistrate finds that a writ of mandamus is appropriate.
 {¶ 32} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion in terminating his PTD compensation and in finding fraud and this court should issue a writ of mandamus ordering the commission to vacate its order terminating relator's compensation and finding fraud and ordering the commission to reinstate that award. *Page 1