[Cite as *State ex rel. Ferrolux Metals Co. of Ohio L.L.C. v. Indus. Comm.*, 2014-Ohio-3302.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Ferrolux Metals Co. of Ohio LLC, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-463 |
| | : | |
| Industrial Commission of Ohio<br>and Derick K. Mayes, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on July 29, 2014

*Ross, Brittain & Schonberg Co., LPA, Michael J. Reidy, Scott W. Gedeon* and *Meredith L. Ulman*, for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale*, for respondent Industrial Commission of Ohio.

*Nurenberg, Paris, Heller & McCarthy Co., L.P.A., Ellen M. McCarthy, Brenda M. Johnson* and *Benjamin P. Wiborg,* for respondent Derick K. Mayes.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Ferrolux Metals Co. of Ohio LLC, filed this original action, naming as respondents the Industrial Commission of Ohio ("commission"), and its former employee, Derick K. Mayes ("claimant"). Relator requests a writ of mandamus ordering the commission to vacate its January 8, 2013 order awarding claimant R.C. 4123.57(B)

scheduled loss compensation for the loss of use of his right hand and to enter an order denying the compensation.

{¶ 2}    Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3}    Relator sets forth two objections to the magistrate's decision, as follows:

> [1.] The Magistrate acknowledged that the Industrial Commissioners' [sic] order was less than clear, as such the matter should be remanded to the Industrial Commission for clarification.
>
> [2.] The Magistrate erred in his interpretation of *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.* when he determined the case did not hold a TFP analysis must be performed in a post-recovery capacity.

{¶ 4}    The argument raised in relator's second objection is essentially the same as that raised previously and addressed by the magistrate. Relator asserts that the magistrate erred by construing *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244, 2004-Ohio-2589, to merely require that the court review co-workers' statements regarding the injured worker's return to work and extracurricular activities. Relator argues that *Timmerman Truss's* particular acknowledgment that one of the doctors failed to address the claimant's post-recovery activities when addressing the "flat loss" theory supports the interpretation that a "two finger plus" analysis must be performed in a post-recovery capacity. Relator suggests the weight of the case law supports such an interpretation as well.

{¶ 5}    In his decision, the magistrate observed that *Timmerman Truss* stated that "[t]he commission has never addressed claimant's postrecovery activities or the reliability of the evidence describing these activities," and that this statement refers to the "numerous co-worker statements" in the record attesting to the claimant's resumption of his former position of employment and other demanding outdoor pursuits. (Appendix at ¶ 61.) The magistrate concluded that *Timmerman Truss* cannot be read to even suggest that the claimant must be at MMI in order to receive a scheduled loss award.

{¶ 6}   For the reasons stated in the magistrate's decision, we reject relator's argument and interpretation of *Timmerman Truss*.

{¶ 7}   Accordingly, relator's second objection to the magistrate's decision lacks merit and is overruled.

{¶ 8}   In his first objection, relator asserts that the magistrate erred by not remanding the order to the commission even though he found the order is "not a model of clarity" with regard to the standard applied to the award. Relator suggests the commission's order violates *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 249 (1991), and *State ex rel. Jeffrey v. Indus. Comm.*, 26 Ohio St.3d 3, 5 (1986).

{¶ 9}   In his decision, the magistrate does indeed note that the commission's order is "not a model of clarity as to the presentation of alternative bases or theories for the award." (Appendix at ¶ 65.)   He concludes, however, that the order coherently explains the alternative theory applied pursuant to *State ex rel. Alcoa  Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, and therefore is consistent with *State ex rel Speelman v. Indus. Comm.*, 73 Ohio App.3d 757, 761 (10th Dist.1992).

{¶ 10} We agree with the magistrate and, therefore, reject relator's argument that the order is not in compliance with *Noll* and *Jeffrey*.

{¶ 11} Accordingly, relator's first objection to the magistrate's decision lacks merit and is overruled.

{¶ 12} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled; writ denied.*


KLATT and LUPER SCHUSTER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel.                                    :
Ferrolux Metals Co. of Ohio LLC,

                                                         :

      Relator,

                                                         :

v.                                                              No. 13AP-463

                                                         :

Industrial Commission of Ohio                                   (REGULAR CALENDAR)
and Derick K. Mayes,                                     :

      Respondents.                          :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on April 10, 2014

---

*Ross, Brittain & Schonberg Co., LPA, Michael J. Reidy, Scott W. Gedeon* and *Meredith L. Ulman*, for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

*Nurenberg, Paris, Heller & McCarthy Co., L.P.A., Ellen M. McCarthy, Brenda M. Johnson* and *Benjamin P. Wiborg,* for respondent Derick K. Mayes.

---

### IN MANDAMUS

{¶ 13} In this original action, relator, Ferrolux Metals Co. of Ohio LLC ("Ferrolux" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its January 8, 2013 order awarding respondent Derick K.

Mayes ("claimant") R.C. 4123.57(B) scheduled loss compensation for the loss of use of his right hand, and to enter an order denying the compensation.

Findings of Fact:

{¶ 14} 1. On January 9, 2012, claimant sustained a severe injury to his right hand while employed as a machine operator for Ferrolux, a state-fund employer. On that date, his right hand was drawn into a slitting machine. The industrial claim (No. 12-800575) is allowed for a crush injury to the right hand and fingers. Among the many allowances, the claim is allowed for amputations of the second, third, fourth, and fifth fingers of the right hand.

{¶ 15} 2. Relator has undergone several right hand surgeries as a result of the industrial injury.

{¶ 16} 3. On May 23, 2012, claimant initially saw Todd S. Hochman, M.D., as his treating physician. Following an examination of claimant's right upper extremity, Dr. Hochman stated:

> Mr. Mayes presents today complaining of discomfort throughout the right hand. It is important to point out that Mr. Mayes was a right hand dominant individual prior to the January 09, 2012 injury. Mr. Mayes reports that he does not use his right hand for any functional purpose. Mr. Mayes is currently using his left hand for personal hygiene, to manipulate utensils, and for all purposeful activity.
>
> * * *
>
> I have had the opportunity to obtain a history, review some medical records, and perform a physical examination on Mr. Derick Mayes. Mr. Derick Mayes sustained a significant crush injury to his right hand for which he ultimately required amputation of the right second, third, fourth, and fifth digits. It is my medical opinion, within a reasonable degree of medical probability, that Mr. Derick Mayes has, for all intents and purposes, lost functional use of his right hand as a result of the January 09, 2012 work injury.
>
> 4. Following a May 29, 2012 office visit, Dr. Hochman wrote:
>
> The patient was working as a set up operator at the time of the injury. He is a right hand dominant individual. He will be unable to return to his previous position of employment. At

this time, I think it is premature to determine that he has reached maximum medical improvement.

* * *

I am going to suggest that we get a second opinion from Dr. Harry Hoyen to determine whether or not the patient is a candidate for any additional surgeries to help gain some function throughout the hand.

{¶ 17} 5. Following a July 31, 2012 office visit, Dr. Hochman wrote:

The patient was referred to Dr. Harry Hoyen, an orthopedic upper extremity surgeon. The patient saw Dr. Hoyen on June 21, 2012. We obtained and reviewed that note. Dr. Hoyen feels that the patient may benefit a 2nd toe transfer to the position of the right ring finger. The patient needs to think about that. Dr. Hoyen feels that the patient would benefit from a prosthetic. I will submit a C-9 requesting the prosthetic consultation.

* * *

Dr. Hoyen feels that the patient may benefit from a right 2nd toe transfer to the right 4th finger position. The patient wants to think about that. Dr. Hoyen is recommending a prosthetic. A C-9 will be submitted.

* * *

The patient will remain out of work. He has not reached maximum medical improvement.

{¶ 18} 6. On an October 2, 2012 office visit, Dr. Hochman wrote:

The patient saw Dr. Hoyen in June 2012 and that that [sic] time the patient felt that he may benefit from a 2nd toe transfer to the right ring finger position. The patient is still not excited about another surgery. He has been wanting to think about it. We requested the prosthetic from Hanger. It appears that it is being reviewed by the BWC Catastrophic Nurse. The patient was approved for the physical therapy and is working with the therapist. We reviewed the notes. He is still early in the treatment course. * * * The patient remains out of work. His current date of disability is through December 15, 2012. There has been no significant change

since the last Medco-14 was completed. We will update a new Medco-14 with the required information re-certifying the disability date is December 15, 2012.

{¶ 19} 7. Following a November 6, 2012 office visit, Dr. Hochman wrote:

The patient saw Dr. Hoyen in June 2012 and Dr. Hoyen felt that the patient may benefit from a second toe transfer to the right ring finger position. The patient is not excited about another surgery. * * * The patient has been working with the physical therapist and we reviewed the notes. Overall, the patient is gaining range of motion throughout the right hand, right wrist, right elbow, and right shoulder. He still has a ways to go. After reviewing the physical therapy notes, and discussing the treatments with the patient, I will submit a C-9 requesting continuation of her rehabilitation program. * * * He remains out of work. We went over his previous job position. He worked in set up for Ferroux [sic] Metals. His job duties required him to utilize the right upper extremity in order to crank open a slitter. The patient then had to take multiple pieces out of the slitter and the pieces could be heavy, requiring utilization of both hands. The patient had to clean the slitter and that also required both hands. The patient had to clean tools which he states required both hands. There were 23 pieces on the top of the slitter and 23 pieces on the bottom of the slitter and the pieces weighed up to 60 pounds each. He had to use both hands to remove the pieces. Certainly, the patient is unable to return to that position of employment due to the significant right hand injury that occurred as a result of the January 9, 2012, work accident. That is within a reasonable degree of probability. When the time is appropriate, return to work services will be addressed but that is a little bit premature.

{¶ 20} 8. On November 1, 2012, claimant visited Harry A. Hoyen, M.D. In a report dated November 9, 2012, Dr. Hoyen wrote:

We discussed the condition. He is interested in prosthetic fitting. We may have to revise or recontour the index finger area. If it is not possible to fit the prosthesis we will proceed with procedure. He will contact us for a disposition after meeting with the prosthetist. Further evaluation in six months otherwise.

{¶ 21} 9. Following a December 11, 2012 office visit, Dr. Hochman wrote:

> I was able to review Dr. Hoyen's November 1, 2012, note. The patient does not want to consider another surgery at this time and Dr. Hoyen does not want to assess for another surgery for another 6 months from the time of the last visit, which is 5 months from now. The patient is unable to return to his previous position of employment. He has not reached maximum medical improvement. He will continue with the rehabilitation. The current date of disability is good through February 15, 2013. I will do a brief update of a new Medco-14 re-certifying disability through that date.

{¶ 22} 10. Earlier, on July 16, 2012, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), claimant was examined by Ralph J. Kovach, M.D. In his three-page narrative report, Dr. Kovach answered two questions:

> [One] QUESTION:
> In your medical opinion, has the allowed injury resulted in total, permanent loss as a result of amputation or severance?
>
> ANSWER:
> It is my opinion that the allowed injury has resulted in a total and permanent loss as a result of the amputation.
>
> [Two] QUESTION:
> Your report should identify and discuss the exact location of amputation or severance. Mark the enclosed diagram.
>
> ANSWER:
> I have identified that the amputation is to the metacarpal phalangeal joints of the digits 2, 3, 4 and 5 and have marked a diagram which you have enclosed to indicate the level of the amputation.

{¶ 23} 11. On August 1, 2012, claimant moved for R.C. 4123.57(B) scheduled loss compensation for the loss of use of his right hand. In support, claimant submitted the May 23, 2012 office note of Dr. Hochman.

{¶ 24} 12. On September 20, 2012, at relator's request, Paul C. Martin, M.D. issued a two-page "Addendum" in which he answered two questions:

> For the purpose of this addendum, I have accepted all of the objective clinical findings identified by Mr. Mayes' evaluating and treating physicians, but not necessarily their conclusions.

All opinions offered in this report are held to a reasonable degree of medical certainty.

**[One] Does Mr. Mayes suffer from a total loss of use of the right hand under a "flat loss of use" theory, meaning that there is no functional use of the hand as if it had been amputated?**

It is my medical opinion Mr. Mayes does not suffer a total loss of use of the right hand under a "flat loss of use" theory. He sustained no injury involving his thumb and still exhibits essentially normal motion and function of the thumb. Considering this, he does not in my opinion have total loss of use of the hand under a "flat loss of use" as his situation is not similar as if the hand had been completely amputated.

**[Two] Bearing in mind your response to the preceding, does Mr. Mayes suffer from an additional disability above the amputation awards already made for his 4 right fingers (100 weeks), due to the nature of his employment at the time of the injury?**

I have reviewed the provided written job description, and based upon Mr. Mayes' clinical findings and the fact he has maintained relatively good function with the thumb, it is my medical opinion Mr. Mayes does not have additional disability above the amputation awards (100 weeks) already made for his 4 amputated fingers.

{¶ 25} 13. Following an October 3, 2012 hearing, a district hearing officer ("DHO") issued an order awarding R.C. 4123.57(B) scheduled loss compensation for the loss of use of the right hand. The DHO's order explains:

Upon review and consideration of the evidence in the claim file and statements at hearing the Injured Worker shall be paid compensation based upon scheduled loss of use of the right hand. Said compensation shall be paid consistent with Ohio law and is the equivalent of one hundred and seventy-five weeks of compensation. The compensation for scheduled loss of use of the right hand shall be paid less compensation the Injured Worker has already received for amputation of four of his fingers.

The payment of the scheduled loss of use of the right hand shall be paid consistent with Ohio law and Bureau of Workers' Compensation regulations.

The Injured Worker sustained a significant right hand injury on 01/09/2012. As a result of the injuries on 01/09/2012 he had to undergo surgery that involved amputation of his right index finger, right middle finger, right ring finger, and right little finger. Also, the Injured Worker underwent debridement of palmer and dorsal skin. The Injured Worker indicated at hearing that he is unable to use a brush as a result of the injuries sustained on 01/09/2012. Therefore, he cannot comb his hair or brush his hair. The Injured Worker cannot button buttons with his right hand. The Injured Worker was right hand dominant. He cannot write with his right hand. Therefore, on a personal level the use of what is left of his right hand (his thumb and palm) provides only some residual functional value. The Injured Worker did indicate he could use his right hand to stabilize some things. He did note that he does have sensitivity at the amputation sites.

Given the medical opinions in the claim file from Dr. Kovach as reflected in his medical report dated 07/16/2012 and in the medical report from Dr. Hochman dated 05/23/2012, there is enough evidence to conclude that the Injured Worker has sustained a total loss of use of his right hand as a result of the industrial injury in this claim.

This order is consistent with the case of the State ex rel. Alcoa Building Products v. Industrial Commission of Ohio et al., 102 St.3d 341 (2004).

This order is based upon the statements of the Injured Worker at hearing, the treatment records contained [in] the claim filed and the medical reports in the claim file from Dr. Kovach dated 07/16/2012 and from Dr. Hochman dated 05/23/2012.

{¶ 26} 14. Relator administratively appealed the DHO's order of October 3, 2012.

{¶ 27} 15. Following a November 16, 2012 hearing, a staff hearing officer ("SHO") issued an order that states that the DHO's order is "modified." However, the SHO's order upheld the DHO's award, explaining:

Prior to the within date of injury, the injured worker was a right handed individual who, since age 26, had been a steel worker (working first in forging and then as a slitter). On 1/9/2012, the injured worker sustained a significant right hand injury. The injury resulted in the surgical amputation of his right index, middle, ring, and little fingers. He also had debridement of palmer and dorsal skin. The injured worker testified at hearing with regard to the limitations this incident and resultant injuries has imposed on many of his activities of daily living. The injured worker's remaining digit, his right thumb, and his palm, with severe skin flap noted, is functional to stabilize some items but he has no gripping or pinching abilities. These injuries are readily visible at hearing.

The order and award are made based on the 05/23/2012 report and opinions and the 11/06/2012 office record and opinions of Dr. Hochman, the 07/15/2012 [sic] report and opinions of Dr. Kovach, and the injured worker's testimony at hearing relative to the many limitations of activities of daily living that he has and his inability to perform, as a now one-handed functioning individual, the jobs he has had historically.

{¶ 28} 16. Relator administratively appealed the SHO's order of November 16, 2012.

{¶ 29} 17. On January 8, 2013, relator's administrative appeal was heard by the three-member commission. On March 22, 2013, the commission mailed an order that vacates the SHO's order of November 16, 2012, but grants claimant's August 1, 2012 motion. The commission's order explains:

On 01/09/2012, the Injured Worker sustained a severe industrial injury when his right hand was pulled into a slitting machine. The extrication of his hand from the machine required the use of the "jaws of life" and took approximately twenty minutes. He was life-flighted to Metrohealth Medical Center in Cleveland. As a result of his accident, the Injured Worker's second, third, fourth, and fifth fingers were amputated.

On 02/06/2012, a request was filed on behalf of the Injured Worker for the amputated fingers to be formally recognized as allowed conditions in the claim. By Staff Hearing Officer order issued 05/17/2012, the claim was ordered additionally

allowed for AMPUTATION SECOND RIGHT FINGER, AMPUTATION THIRD RIGHT FINGER, AMPUTATION FOURTH RIGHT FINGER, and AMPUTATION FIFTH RIGHT FINGER. The Staff Hearing Officer also granted scheduled loss awards for the total loss of the right second, third, fourth and fifth fingers. The award was for 100 weeks, beginning 01/10/2012, pursuant to R.C. 4123.57 (B).

By C-86 Motion filed 08/01/2012, the Injured Worker requested an award for the scheduled loss of use of the right hand.

Relative to a loss involving the hand, R.C. 4123.57 (B) states:

If a claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.

For the loss of a hand, one hundred seventy-five weeks.

In this case, the Commission finds the Injured Worker has sustained his burden of proving that he suffered the loss of two or more fingers by amputation, and that his loss exceeds the normal handicap or disability resulting from the loss of fingers. The Commission finds the Injured Worker's loss is equivalent to the loss of use of the right hand.

In granting this award, the Commission has relied upon the 07/16/2012 report from Ralph J. Kovach, M.D., wherein Dr. Kovach confirms the Injured Worker sustained the amputations of the second, third, fourth and fifth digits of the right hand. Further, the reports from Todd S. Hochman, M.D., dated 05/23/2012, 07/31/2012, and 11/06/2012, support the determination that medically, the Injured Worker's finger amputations result in the loss of functional use of the right hand. Dr. Hochman noted the right wrist has limited range of motion, especially with dorsiflexion, due to the skin graft of the distal aspect of the remaining portion of

the right hand. While Dr. Hochman opined the Injured Worker has fairly well maintained range of motion in the right thumb, the Injured Worker testified that he is limited in what he can do with the thumb since the skin is on the bone, and his doctor has advised him to avoid use of the thumb to prevent infection. The Injured Worker also testified that before the accident at work, he had been a right handed individual, and now he is required to perform all personal hygiene and other manipulative tasks with his left hand. The Injured Worker testified that the only functional use he has of his right hand is to stabilize or balance items that are being carried with the left. It is not necessary for the Injured Worker's hand to be of absolutely no use in order to find the Injured Worker has lost the use of the hand for "all practical purposes." State ex rel. Alcoa Bldg. Prods. v. Indus. Comm., 102 St.3d 341, 343, 2004-Ohio-3166, 810 N.E.2d 946.

In the report from Dr. Hochman, dated 11/06/2012, Dr. Hochman reviewed the tasks the Injured Worker was required to perform in his job as a set up person for Ferrolux Metals, the Employer of record. Dr. Hochman detailed the necessity of using the right hand to operate a crank to open the slitter, and using both hands to move heavy pieces out of the slitter, to clean the slitter, to clean the tools, and to position the pieces in the slitter. Dr. Hochman indicated the pieces weighed up to sixty pounds each. Dr. Hochman wrote:

Certainly, the patient is unable to return to that position of employment due to the significant right hand injury that occurred as a result of the January 9, 2012, work accident. That is within a reasonable degree of medical probability. * * * Certainly, the patient is unable to perform job duties because of the right hand injury and that is within a reasonable degree of medical probability. It remains my medical opinion that, for all intents and purposes, the patient has lost functional use of the right hand. The patient is unable to return to his previous position of employment. He has not reached maximum medical improvement.

Additionally, the Commission notes the testimony of the Injured Worker which expanded on the tasks required in his former position of employment. Per the Injured Worker, he was required to remove and replace 23 pieces from the top of the slitter and 23 pieces from the bottom of the slitter in order to adjust the slitter to cut the metal to the required size

for each job. The tools used averaged 55 pounds each and would require the use of both hands to maneuver. When asked by the Commission what part of his former position of employment he could still perform with only one hand, the Injured Worker stated "nothing." The Commission specifically finds the Injured Worker's post-injury activities are severely compromised. State ex rel. Timmerman Truss, Inc. v. Indus. Comm., 102 Ohio St.3d 244, 2004-Ohio-2589, 809 N.E.2d 15.

Based on all the evidence cited above, it is the finding and order of the Commission that the Injured Worker has met his burden of proof, and that the disability the Injured Worker sustained as a result of his industrial injury on 01/09/2012 exceeds the normal handicap or disability resulting from the loss of two or more fingers, pursuant to R.C. 4123.57 (B). The Commission finds the Injured Worker will not be able to return to work at his former position of employment. Therefore, it is the order of the Commission that the Injured Worker is granted 175 weeks compensation pursuant to R.C. 4123.57 (B), less the previously paid compensation under R.C. 4123.57 (B) in the amount of 100 weeks.

(Emphasis sic.)

{¶ 30} 18. On June 3, 2013, relator, Ferrolux Metals Co. of Ohio LLC, filed this mandamus action.

Conclusions of Law:

{¶ 31} Two issues are presented: (1) whether, as relator suggests, an R.C. 4123.57(B) scheduled loss award is precluded until the industrial injury has reached maximum medical improvement ("MMI"), and (2) did the commission use the incorrect standard in determining that claimant has lost the use of his right hand under the "two fingers plus" theory and awarding the full 175 weeks of compensation for the loss?

{¶ 32} The magistrate finds: (1) the R.C. 4123.57(B) scheduled loss award is not precluded by claimant's MMI status, and (2) the commission did not use the incorrect standard in determining that claimant has lost the use of his right hand under the "two fingers plus" theory and awarding the full 175 weeks of compensation for the loss.

{¶ 33} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

**Basic Law**

{¶ 34} R.C. 4123.57(B) provides for so-called scheduled loss compensation. Pertinent here, the statute provides for 175 weeks of compensation for the loss of a hand and lesser weeks of compensation for loss of any of the five fingers of the hand.

{¶ 35} For loss of the second finger (index finger) 35 weeks of compensation shall be paid. For loss of the third finger (long finger) 30 weeks of compensation shall be paid. For loss of the fourth finger (ring finger) 20 weeks of compensation shall be paid. For loss of the fifth finger (little finger) 15 weeks of compensation shall be paid.

{¶ 36} Thus, loss of all fingers except the thumb (first finger) entitles the claimant to 100 weeks of compensation under the statute.

{¶ 37} The statute provides for two theories under which compensation for loss of a hand may be based: (1) the so-called "flat loss" theory, and (2) the so-called "two fingers plus" theory. *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.,* 102 Ohio St.3d 244, 2004-Ohio-2589.

{¶ 38} The "flat loss" theory is premised upon amputation loss or loss of use of the fingers and parts of the hand. *Id.* at ¶ 24.

{¶ 39} The "two fingers plus" theory is set forth in the following paragraph of R.C. 4123.57(B):

> If the claimant has suffered the loss of two or more fingers by amputation or ankylosis and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury or occupational disease is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand.

{¶ 40} The only compensable loss of use under R.C. 4123.57(B) is a permanent and total loss of use. *State ex rel. Welker v. Indus. Comm.,* 91 Ohio St.3d 98 (2001). An injured worker claiming a loss of use under R.C. 4123.57(B) has the burden of showing that his loss of use is permanent. *State ex rel. Carter v. Indus. Comm.,* 10th Dist. No. 09AP-30, 2009-Ohio-5547, citing *Welker.*

{¶ 41} Traditionally, court cases have determined the merits of a motion for scheduled loss compensation under the "two fingers plus" theory by analyzing the impact of the finger loss upon the claimant's residual ability to perform the duties of his former position of employment. Where a claimant's finger loss permanently prevents the claimant from returning to his former position of employment, an award for loss of the hand may be entered. *State ex rel. Superior Forge & Steel Corp. v. Indus. Comm.,* 10th Dist. No. 12AP-270, 2013-Ohio-2450. This is so even though the claimant returns to another job that pays the same as his former position of employment and, thus, there is no economic loss. *Id.*

{¶ 42} In *Timmerman Truss*, a case heavily relied upon by relator, an SHO entered an award for the loss of use of the right hand, placing reliance upon the reports of Drs. Gibson and Bamberger. The employer filed in this court a mandamus action challenging the award. This court issued a writ returning the cause to the commission for further consideration under the "two fingers plus" theory.

{¶ 43} On an appeal as of right, the Supreme Court of Ohio determined that the reports of Drs. Gibson and Bamberger were seriously flawed.

{¶ 44} The Supreme Court noted that the record contained numerous co-worker statements that—while containing evidentiary deficiencies of their own—all attest to the claimant Chad Wagner's resumption of his former position of employment and of other demanding outdoor pursuits.

{¶ 45} The Supreme court noted that, under *State ex. rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, medical evidence of disability or loss can be impeached by evidence of actual work or other physical activity inconsistent with that assessment.

{¶ 46} Focusing upon Dr. Gibson's report, the *Timmerman Truss* court states:

> Unlike Dr. Bamberger's April 22, 2002 report, Dr. Gibson's report does set forth the findings underlying his opinion and appears to be more cognizant of the *Walker* loss standard. Gibson cites claimant's amputation and the fact that claimant has "Kerchner wires and ankylosis of other joints of the fingers, which, in effect, renders this hand as useless for functional purposes." He also notes neurosensory and neuromotor loss as well as the absence of thumb/index

finger opposition. With claimant's dexterity and functional capacity "near zero," Dr. Gibson concluded that there was a total loss of use.

Under most circumstances, therefore, Dr. Gibson's report alone would support the commission's award. Here, however, *Schultz* demands that the medical assessment be viewed in the context of claimant's postrecovery physical and work activities. *Id.*, 96 Ohio St.3d 27, 2002-Ohio-3316, 770 N.E.2d 576, ¶ 64.

For this reason, the cause must be returned for further consideration and an amended order. The commission has never addressed claimant's postrecovery activities or the reliability of the evidence describing these activities. This is crucial to further review. A return, moreover, will afford the commission the opportunity to address the possibility of total loss under the "two fingers plus" provision of R.C. 4123.57(B) cited by the court of appeals.

*Id.* at ¶ 29-31.

## First Issue—MMI

{¶ 47} MMI is a termination criteria for temporary total disability ("TTD") compensation under R.C. 4123.56.

{¶ 48} Ohio Adm.Code 4121-3-32(A)(1) currently provides:

"Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

{¶ 49} In *Vulcan Materials Co. v. Indus. Comm.*, 25 Ohio St.3d 31, 33 (1986), the court states:

We hold that in the consideration of the permanency of a disability, the commission need not determine whether the claimant could return to his former position of employment. The commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment. Further, in *Logsdon v. Indus. Comm.* (1944),

> 143 Ohio St. 508, 57 N.E.2d 75 [28 O.O. 429], at paragraph two of the syllabus, this court defined the term "permanent" as applied to disability under the workmen's compensation law as a condition which will, "* * * with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom."

{¶ 50} The permanency concept defined in *Vulcan* is essentially identical to the MMI concept defined in Ohio Adm.Code 4121-3-32(A)(1). *See State ex rel. Matlack, Inc. v. Indus. Comm.*, 73 Ohio App.3d 648 (10th Dist.1991).

{¶ 51} In *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.,* 121 Ohio St.3d 341, 2009-Ohio-1219, a case cited by relator, the court reaffirmed the viability of *Vulcan* notwithstanding dicta found in *State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005-Ohio-5829.

{¶ 52} Also reaffirmed by the *DaimlerChrysler* court was the explanation given in *State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm.,* 48 Ohio St.3d 25 (1990), that "[a] claimant's permanent inability to return to his former position of employment does not mean the claimant's medical condition will not improve." *DaimlerChrysler* at ¶ 14, quoting *General American* at 25.

{¶ 53} Here, as earlier noted, relator suggests that an R.C. 4123.57(B) scheduled loss award is precluded until the industrial injury has reached MMI.

{¶ 54} According to relator, the award is "premature." (Relator's brief, 8.) Citing *Timmerman Truss,* relator asserts that claimant "must no longer be in the recovery phase" and that claimant was still in the "recovery phase" at the time the commission entered the award. (Relator's brief, 9.)

{¶ 55} Pointing to Dr. Hochman's July 31, 2012 opinion that claimant "has not reached maximum medical improvement," relator asserts that "there is expected improvement * * * which would impact his ability to return to his former position of employment in any capacity." (Relator's brief, 12.) Relator concludes that the award is "premature" because "there is no definite indication yet of what functions Mr. Mayes will be able to perform." (Relator's brief, 12.)

{¶ 56} Relator's arguments are unpersuasive.

{¶ 57} Analysis begins with the observation that the commission determined, pursuant to R.C. 4123.57(B), that claimant's disability "exceeds the normal handicap or disability resulting from the loss of two or more fingers" because claimant "will not be able to return to work at his former position of employment."   In reaching this determination, the commission relied upon Dr. Hochman's November 6, 2012 office note in which Dr. Hochman reviewed in great detail the tasks involved in the set up of the machine and concluded that claimant is "[c]ertainly * * * unable to return to that position of employment due to the significant right hand injury."

{¶ 58} It is reasonably clear that both Dr. Hochman and the commission concluded that claimant's inability to return to his former position of employment is permanent, and the medical evidence, especially from Dr. Hochman, and claimant's own testimony, supports the conclusion that claimant will never be able to return to his former position of employment regardless of any future medical treatments.

{¶ 59} Relator's invocation of the MMI concept is inappropriate here.   As well-settled case law clearly indicates, the determination of MMI has absolutely no bearing upon a claimant's ability to perform the tasks involved in his former position of employment.  *Vulcan.*

{¶ 60} In short, the commission's determination that claimant will never be able to return to his former position of employment is not at all inconsistent with claimant's medical status as to MMI.

{¶ 61} Relator here seems to misread *Timmerman Truss.*  When the *Timmerman Truss* court states that "[t]he commission has never addressed claimant's postrecovery activities or the reliability of the evidence describing these activities," the court was referring to the "numerous co-worker statements" in the record attesting to Chad Wagner's resumption of his former position of employment and other demanding outdoor pursuits.  *Id.* ¶ 31, 26.  That is, the commission failed to consider that evidence when it determined to rely upon Dr. Gibson's report.

{¶ 62} Here, relator endeavors to construe *Timmerman Truss* as requiring that there be proof that claimant cannot significantly improve his medical status or cannot improve his medical status at all.  Clearly, *Timmerman Truss* does not support relator's

position. Moreover, *Timmerman Truss* cannot be read to even suggest that the claimant must be at MMI in order to receive a scheduled loss award.

{¶ 63} Accordingly, the magistrate concludes that the R.C. 4123.57(B) scheduled loss award is not precluded until the industrial injury has reached MMI.

**Second Issue: Incorrect Standard?**

{¶ 64} Relator incorrectly concludes that the commission based its award only upon the "two fingers plus" theory. Based upon this incorrect conclusion, relator argues that the commission abused its discretion by applying the "flat loss" theory under the standard set forth in *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.,* 102 St.3d 341, 2004-Ohio-3166, to its determination that claimant's disability from his loss of fingers exceeds the normal handicap or disability resulting from loss of fingers.

{¶ 65} The magistrate acknowledges that the commission's order of January 8, 2013 is not a model of clarity as to the presentation of alternative bases or theories for the award.

{¶ 66} In *State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757, 761 (10th Dist.1992), this court states:

> It is not improper to state alternative grounds for supporting the order, but those grounds should not be merged together and should be explained separately so that a reviewing court can understand what has been done.

{¶ 67} In the magistrate's view, the following portion of the commission's January 8, 2013 order coherently presents the explanation for finding a flat loss award:

> [T]he reports from Todd S. Hochman, M.D., dated 05/23/2012, 07/31/2012, and 11/06/2012, support the determination that medically, the Injured Worker's finger amputations result in the loss of functional use of the right hand. Dr. Hochman noted the right wrist has limited range of motion, especially with dorsiflexion, due to the skin graft of the distal aspect of the remaining portion of the right hand. While Dr. Hochman opined the Injured Worker has fairly well maintained range of motion in the right thumb, the Injured Worker testified that he is limited in what he can do with the thumb since the skin is on the bone, and his doctor has advised him to avoid use of the thumb to prevent infection. The Injured Worker also testified that before the accident at work, he had been a right handed individual, and

> now he is required to perform all personal hygiene and other manipulative tasks with his left hand. The Injured Worker testified that the only functional use he has of his right hand is to stabilize or balance items that are being carried with the left. It is not necessary for the Injured Worker's hand to be of absolutely no use in order to find the Injured Worker has lost the use of the hand for "all practical purposes." State ex rel. Alcoa Bldg. Prods. v. Indus. Comm., 102 St.3d 341, 343, 2004-Ohio-3166, 810 N.E.2d 946.

{¶ 68} In the above-quoted portion of the order, the focus is how the injury impacts claimant's activities of daily living such as "personal hygiene." The commission notes claimant's hearing testimony that the only functional use of the right hand is to stabilize or balance items that are being carried with the left. The quoted portion concludes with a reference to the *Alcoa* standard.

{¶ 69} Thus, relator's argument that the commission used the incorrect standard in determining a "two fingers plus" award lacks merit.

{¶ 70} Relator also argues that the commission's order is flawed for its alleged failure to explain why the full 175 weeks was awarded other than some number of weeks between 100 and 175. This argument fails because there is clearly some evidence relied on by the commission to support the full 175 weeks. *See State ex rel. St. Marys Foundry Co. v. Indus. Comm.*, 78 Ohio St.3d 521, 524 (1997) (VSSR assessments are sufficiently explained when the commission grants an express award amount within the range specified in the Ohio Constitution).

{¶ 71} Based on the above analysis, the magistrate concludes that the commission has not abused its discretion.

{¶ 72} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).